*196 Voto particular disidente emitido por
la Juez Asociada Señora Rodríguez Rodríguez.
Disiento de la decisión que hoy toma una mayoría de los miembros de este Tribunal que rehúsa revisar la determi-nación del tribunal apelativo intermedio en este caso, en el cual se validó la acción legislativa de descolegiar la profe-sión legal en Puerto Rico. Ello supone el incumplimiento de lo que es nuestra función principal como tribunal de última instancia: pautar el Derecho puertorriqueño. Pero más grave aún, la decisión de la mayoría rinde a los pies de la Asamblea Legislativa, nuestra prerrogativa centenaria de supervisar y regular la profesión legal. Con su “inacción”, esa mayoría convalida una acción que cercena poderes in-herentes de este Tribunal. Con su “inacción”, la mayoría valida una actuación de dudosa constitucionalidad.
Porque discrepo de este proceder, disiento del criterio mayoritario.
I
La Asamblea Legislativa, a la usanza de los gobernado-res militares de finales del siglo XIX, aprobó la Ley Núm. 121 de 13 de octubre de 2009, 4 L.P.R.A. secs. 772 n., 773-775, 780-781, 783, 2011 y 2021, y la Ley Núm. 135 de 6 de noviembre de 2009, 4 L.P.R.A. secs. 772 n., 773-774 y 777-778, con el objetivo de derogar la colegiación compulsoria de los abogados en Puerto Rico desmembrando la organi-zación centenaria que, con sus aciertos y desaciertos, le ha servido bien al país. Véase la Orden General Núm. 20 pro-mulgada por el gobernador militar John R. Brooke en 1898.
El Colegio de Abogados de Puerto Rico (Colegio), natu-ralmente, acudió el 22 de diciembre de 2009 ante el Tribunal de Primera Instancia para cuestionar la constituciona- *197 lidad de ambas leyes. En esencia planteó lo siguiente: (1) que los estatutos aprobados constituían leyes de proscrip-ción contra el Colegio; (2) usurpaban los poderes de esta Curia para reglamentar la profesión de la abogacía; (3) vio-laban la separación de poderes, la libertad de expresión y de asociación del Colegio y sus miembros, así como la igual protección de las leyes, y (4) que menoscababa la relación contractual entre el Colegio y los colegiados, entre otros asuntos. Posteriormente, el 19 de enero de 2010, el Colegio presentó urna demanda enmendada y suplementaria en la cual expandió sus alegaciones fácticas. En el ínterin, la parte demandada y el interventor, Ledo. John E. Mudd, habían presentado sendas mociones de desestimación y sentencia sumaria. El foro primario había aceptado la de-manda enmendada y se había negado a desestimarla.
Así las cosas, el interventor acudió ante el Tribunal de Apelaciones y solicitó que se paralizaran los procedimien-tos en instancia. Tras el Estado presentar su propio re-curso de certiorari, el foro apelativo intermedio consolidó los recursos y paralizó los procedimientos en el Tribunal de Primera Instancia, y ordenó a este que fundamentara su negativa de desestimar la demanda presentada.
El foro primario emitió una resolución en cumplimiento de orden en la cual expuso las razones para denegar las mociones dispositivas presentadas por el demandado y el interventor. En síntesis, expresó que existían hechos en controversia y que una mera alegación a los efectos de que la parte demandante carecía de prueba para sustentar sus reclamos era insuficiente para desestimar la acción. Ra-zonó que era necesario escuchar a las partes y examinar aquella evidencia que pudieran presentar los demandantes antes de tomar una determinación en el caso. Luego de que el foro apelativo intermedio ordenara una segunda resolu-ción explicativa, el tribunal primario expuso que las mocio-nes dispositivas se habían tornado inoficiosas, pues estas se presentaron contra la petición original de los deman- *198 dantes y no fueron instadas nuevamente luego de que los demandantes presentaran su demanda enmendada. De igual forma, reiteró que era necesario brindar a los deman-dantes la oportunidad de presentar su prueba para deter-minar si procedía el remedio de injunction.
El 18 de mayo de 2010, tras recibir los alegatos de las partes, el Tribunal de Apelaciones dictó sentencia me-diante la cual revocó al foro primario. Aquel determinó que las mociones dispositivas podían atacar la demanda en-mendada y que las controversias entre las partes eran es-trictamente de derecho. Luego concluyó que los demandan-tes no tenían derecho a remedio alguno, ya que las Leyes Núms. 121 y 135 solo pretendían regular los procedimien-tos de una “criatura legislativa”: el Colegio. Insatisfechos con la determinación, el Colegio de Abogados de Puerto Rico presentó ante esta Curia un recurso de certiorari el 12 de julio de 2010.
Debido a que considero que el presente recurso encierra controversias de gran envergadura para la profesión jurí-dica del país así como para el propio Tribunal, me parece incomprensible que una mayoría de este Tribunal haya de-terminado no considerar este recurso. Forzosamente tengo que disentir.
II
El caso ante nuestra consideración presenta asuntos de suma importancia que estimo merecen un examen dete-nido, sereno y objetivo por este Tribunal. Este no es el tipo de caso que debe resolverse mediante un “no ha lugar”.(1)
En primer lugar, hoy debíamos examinar si la Asamblea Legislativa habría rebasado los contornos de sus poderes, afectando el delicado balance entre las ramas del Estado diseñado por nuestra Constitución, quebrantando, en ese *199 proceso, nuestros precedentes en materia de separación de poderes. Entre otros, nos enfrentamos a una controversia sobre la usurpación por la Legislatura del poder inherente de la Rama Judicial para regular el ejercicio de la abogacía. In re Reichard Hernández, 180 D.P.R. 604 (2011). Ello, ya que las Leyes Núms. 121 y 135, supra, eliminan la colegiación compulsoria que entendimos imprescindible hace décadas, como exigencia de ese poder inherente. Véanse: Colegio de Abogados de P.R. v. Schneider [I], 112 D.P.R. 540 (1982); Colegio de Abogados v. Schneider [II], 117 D.P.R. 504 (1986).
De otra parte, estas leyes también exigen que este Foro promulgue cierta reglamentación mediante ciertos térmi-nos, así como también nos ordena cómo debemos manejar los fondos que podríamos recibir si decidimos establecer una cuota. De igual forma los estatutos impugnados, por ejemplo, disponen que: (1) si adoptamos esa cuota, no po-dría ser mayor a $200; (2) si tenemos a bien modificarla posteriormente, mandan a consignar las justificaciones para ello; (3) establecen cómo han de identificarse los abo-gados ante los tribunales, y (4) nos ordenan notificar a to-dos los abogados sobre los efectos de las leyes en cuestión y a expedir tarjetas de identificación para los abogados que decidan no colegiarse. Estas “directrices”, que se refieren a cómo debemos descargar nuestro poder inherente para regular la profesión legal, además de incidir directamente sobre nuestras prerrogativas sobre la administración de nuestros asuntos internos, se revela, como poco, de dudosa validez constitucional.
Por otro lado, hay que destacar que consideramos que la unidad institucional de los abogados es un presupuesto le-gítimo y necesario para el ejercicio de la profesión legal y ello se encuentra inmerso, y es consustancial con, el man-dato de la Constitución que crea “un sistema judicial uni-ficado en lo concerniente a jurisdicción, funcionamiento y administración”. Art. V, Sec. 2, Const. E.L.A., L.P.R.A., *200 Tomo 1, ed. 2008, pág. 412. La administración eficiente de la Justicia es la aspiración que quedó plasmada en el Art. V de la Constitución sobre el Poder Judicial. L.P.R.A., Tomo 1. Le corresponde a esta Curia garantizarla para que este mandato deje de ser un mero anhelo para convertirse en realidad. Este designio no tan solo fue un valor latente en las discusiones acaecidas durante los debates de la Con-vención Constituyente, sino que se recoge expresamente en el informe que la Comisión de la Rama Judicial le presentó a la Convención Constituyente. 4 Diario de Sesiones de la Convención Constituyente de Puerto Rico 2608-2614 (1962). Véase Colegio de Abogados de P.R. v. Schneider [I], ante (Negrón García, J., op. concurrente).
Con lo cual, no se requiere “mucha elucidación para comprender que la asociación compelida y la reglamenta-ción de la profesión de abogados está inexorablemente atada a esa eficaz gestión pro la justicia. No es posible entonces divorciar una de la otra; el sistema judicial inte-grado es la médula de la dinámica operacional constitucional y también va de la mano con el régimen unificado de colegiación compulsoria”. (Enfasis en el original.) Colegio de Abogados de P.R. v. Schneider [I], ante, pág. 558 (Negrón García, J., op. concurrente).
Hace un siglo, este Tribunal sostuvo que “[l]a misión de los abogados en la sociedad es altamente noble, pues están llamados a auxiliar a la recta administración de justicia. En ellos confían, no sólo las partes interesadas en los plei-tos, sino las cortes mismas”. In re Díaz, 16 D.P.R. 82, 92 (1910). En época reciente, al actualizar ese pensamiento centenario, indicamos que “la abogacía cumple una función social de notable importancia por su aportación imprescin-dible a la realización de la Justicia. El abogado, además de defensor de su cliente, es colaborador de la Justicia”. In re Hoffman Mouriño, 170 D.P.R. 968, 980 (2007). Y es que la abogacía es un ejercicio de una actividad esencial para la *201 realización de la justicia y los valores y principios constitucionales. Véase A. Hernández Gil, La Función Social del Abogado y la Abogacía, Rev. Abogados, 34, 35 (Feb. 2008). Tan es así, que hemos expresado que “[l]a responsa-bilidad sobre la buena marcha del proceso judicial es com-partida entre todos los estamentos que intervienen en es-tos procesos, por lo que es compromiso ineludible de todo abogado”. In re Dávila Toro, 179 D.P.R. 833, 841 (2010). Todo lo cual nos lleva a cuestionarnos, con rigor, la validez constitucional de las leyes aprobadas por la Asamblea Le-gislativa que minan la estabilidad del Colegio de Abogados.
Como si ello fuera poco, en el caso de autos debíamos determinar si las Leyes Núm. 121 y Núm. 135, infringen derechos fundamentales del Colegio y sus miembros, como el derecho a la libertad de expresión y a la libre asociación cobijados por la See. 4 del Art. II de nuestra Constitución. Art. II, Sec. 4, Const. E.L.A., L.P.R.A., Tomo 1. Igualmente, el presente recurso nos brindaba la oportunidad de expre-sarnos en torno a si las leyes impugnadas constituyen le-gislación de proscripción (bills of attainder), prohibidas se-gún la Constitución de Estados Unidos, Art. I, Sec. 9. Este tipo de leyes están vedadas, ya que representan castigos impuestos por la Legislatura sin que los tribunales reali-cen un juicio. United States v. Brown, 381 U.S. 437 (1965); Cummings v. Missouri, 71 U.S. 277 (1867). Ello no obs-tante, la mayoría desoye estos reclamos y se niega permi-tirle al Colegio presentar prueba para sustentar sus recla-mos constitucionales. En correcta técnica adjudicativa, ello era necesario para sustentar varios de los reclamos de ín-dole constitucional presentados por el Colegio de Abogados.
Es evidente que las Leyes Núm. 121 y Núm. 135, ante, afectan sustancialmente la organización del Colegio y las funciones de esta Curia. A su vez, argumentan controver-sias trascendentales de talante constitucional. Empero, hoy la mayoría del Tribunal rechaza enfrentarse a las in-terrogantes reseñadas. No puedo suscribir con mi voto tal proceder.
*202 Era necesario atender este recurso. Se trata de reclamos serios elaborados por una de las instituciones más anti-guas de nuestro país, la cual ha puesto todo su empeño en promover el mejor bienestar de los miembros de la clase togada y la protección de los derechos de la población en general, haciendo realidad el valor que postula que la abo-gacía es sustancia social, antes que formalismo jurídico. Hernández Gil, ante. Basta con recordar algunos de nues-tros pasados pronunciamientos:
El Colegio de Abogados ha cumplido adecuadamente las obligaciones que le impuso la ley que lo creó. Ha contribuido al mejoramiento de la administración de la justicia; ha formu-lado informes; ha contestado consultas reclamadas por el Go-bierno; ha defendido con celo los derechos e inmunidades de los abogados procurando que éstos gocen ante los tribunales de la libertad necesaria para el buen desempeño de su profe-sión; ha promovido relaciones fraternales entre sus miembros, y ha velado por el sostenimiento de una saludable moral pro-fesional entre los colegiados. También ha contribuido a enri-quecer la vida intelectual de los abogados y ha fortalecido la aspiración colectiva a una sociedad democrática al amparo de la ley.
El Colegio es una entidad democrática. Su Presidente, su Junta de Gobierno y las directivas de las Delegaciones son electos en asambleas que garantizan a todos los colegiados la participación, libre expresión y el derecho a presentar y deba-tir resoluciones. En la asamblea anual se aprueba el presu-puesto de la institución. La vida institucional propicia la par-ticipación abierta y la tolerancia.
La institución ha alentado la libertad de expresión entre sus colegiados y entre los ciudadanos. Mediante el pago de un canon preestablecido permite el uso de algunos de sus recursos físicos a toda persona, natural o jurídica, que interese ejercer la libertad de expresión garantizada por las disposiciones constitucionales aplicables. Por reglamento, exime de dicho canon a determinadas instituciones íntimamente relacionadas con las funciones que le han sido encomendadas al Colegio, principalmente compuestas por abogados o estudiantes de derecho. Como foro libre para la profesión y para la comuni-dad el Colegio ha propiciado exhibiciones artísticas, artesana-les y, en síntesis, ha contribuido a mejorar la calidad de la vida. La institución juega un papel importante en el desarrollo vital del país.
*203 En resumen, el estudio de la prueba revela la multidimen-sionalidad de las actividades del Colegio y en casi su totalidad su íntima relación con la profesión y fines y propósitos del Colegio. Colegio de Abogados v. Schneider [II], ante, págs. 513-518.
Al concluir,(2) hago mías las expresiones del Juez Aso-ciado Señor Negrón García en Colegio de Ahogados v. Schneider I, ante, págs. 559-560, las cuales, sin duda, no han perdido su vigencia con el transcurso del tiempo:
Como toda institución humana el Colegio de Abogados no es infalible. Las fallas del pasado o recientes en que haya podido incurrir, el desagrado de algunos de sus miembros a sus pro-nunciamientos públicos, no ... son razones de peso suficientes para la destrucción de una institución de hondo arraigo en la sociedad puertorriqueña, que históricamente se ha distinguido como foro abierto de libertad y en la protección de innumera-bles causas meritorias. (Enfasis suplido.)
Deberíamos todos dedicarnos a construir —no a abatir para extinguir— instituciones que le sirven bien no solo a los miembros de su gremio, sino a la sociedad en general, ofreciendo espacios para la discusión libre, abierta y enri-quecedora de los distintos asuntos que se dilucidan en el país; que actúa como fuerza de defensa de los derechos en todos los aspectos de la vida social, cultural y política, y no al margen de ellos. De esta forma se fortalece y crece toda sociedad que se presuma madura, democrática y plural.
Porque en esto creo, estoy compelida a disentir del cri-terio de la mayoría.

 La “explicación” ofrecida en la Resolución certificada no refleja el dictamen razonado que ameritaba la controversia planteada en este caso.

 Aclaro que sólo he esbozado algunas de las controversias que se plantean en este caso.